**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>EQUILIBRE BIOPHARMACEUTICALS CORP.,<br><br><div align="right">*Debtor*.</div> | |
| GREGORY M. MESSER Solely in His Capacity as Chapter 7 Trustee of the Estate of Equilibre Biopharmaceuticals Corp.,<br><br><div align="right">*Plaintiff*,</div><br><div align="center">-against-</div><br>SAMUEL WAKSAL, individually, as the former Chairperson, Chief Executive Officer, and President of Equilibre Biopharmaceuticals Corp. Chairperson, and Chief Executive Officer and President of Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp. (USA), and Graviton Bioscience B.V., FRANCOIS MAISONROUGE, RUI WU, PETER SIMON, GRAVITON BIOSCIENCE CORPORATION, GRAVITON BIOSCIENCE HOLDING CORPORATION, GRAVITON US CORP. (USA), GRAVITON BIOSCIENCE B.V., BIHUA CHEN,<br><br><div align="right">*Defendants*.</div> | Bankruptcy Case No.<br>23-12099 (PB)<br><br>Chapter 7<br><br><br>Adversary Proceeding Case No.<br>25-01087 (PB)<br><br><br>Civil No. _____ |

<div align="center">

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO WITHDRAW THE REFERENCE TO BANKRUPTCY COURT**

</div>

<div align="right">

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
(212) 344-5400

*Attorneys for Defendants Samuel Waksal,*
*Rui Wu, Graviton Bioscience Corporation,*
*Graviton Bioscience Holding Corporation,*
*Graviton US Corp. (USA), Graviton*
*Bioscience B.V., and Bihua Chen*

</div>

June 23, 2025

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................3

ARGUMENT

THIS COURT SHOULD WITHDRAW THE REFERENCE TO THE BANKRUPTCY
COURT FOR THE ADVERSARY PROCEEDING ....................................................................7

I.     LEGAL STANDARD....................................................................................................8

II.    THE THRESHOLD ISSUES HERE FAVOR WITHDRAWING THE
       REFERENCE...............................................................................................................9

       A.     The Bankruptcy Court lacks constitutional authority to issue a final
              adjudication in this matter....................................................................................10

       B.     The Adversary Proceeding is a non-core matter.....................................................11

III.   CONSIDERATION OF THE *ORION* FACTORS FAVORS WITHDRAWING
       THE REFERENCE........................................................................................................12

       A.     Withdrawing the reference serves the interests of judicial efficiency. ...............13

       B.     Withdrawing the reference does not impede uniformity interests. ....................15

       C.     Withdrawing the reference respects the parties' rights to a jury trial. ...............16

       D.     Withdrawing the reference will not encourage forum shopping. .......................17

IV.    THE MOTION TO WITHDRAW THE REFERENCE IS TIMELY. .............................17

CONCLUSION................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*AJ Ruiz Consultoria Empresarial S.A. v. Banco Bilbao Vizcaya Argentaria, S.A.*,
   No. 22 CIV. 521 (LGS), 2022 WL 1831171 (S.D.N.Y. June 3, 2022)......................................8

*AJ Ruiz Consultoria Empresarial S.A.*,
   2022 WL 1831190........................................................................................................................12

*Brown Publ'g Co. v. Brown*,
   No. 15-MC-0531(JS), 2017 WL 455418 (E.D.N.Y. Feb. 1, 2017)...........................................17

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
   462 B.R. 457 (S.D.N.Y. 2011) ...............................................................................13, 14, 15, 17

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*,
   464 B.R. 587 (S.D.N.Y. 2012) ...........................................................................................13, 14

*Drew v. WorldCom, Inc.*,
   2006 WL 2129309 (S.D.N.Y. July 26, 2006) ..........................................................................18

*Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*,
   905 F. Supp. 2d 526 (S.D.N.Y. 2012)..........................................................................9, 14, 15

*In re Arbco Cap. Mgmt., LLP*,
   479 B.R. 254 (S.D.N.Y. 2012) .............................................................................................11, 12

*In re Bridge Const. Servs. of Fla., Inc.*,
   140 F. Supp. 3d 324 (S.D.N.Y. 2015) .......................................................................................16

*In re Celsius Network LLC*,
   No. 1:25-CV-00926 (JLR), 2025 WL 1040643 (S.D.N.Y. Apr. 8, 2025) .........................*passim*

*In re Empire Stat Grp., LLC*,
   No. 24-CV-04101 (ER), 2024 WL 3666381 (S.D.N.Y. Aug. 5, 2024) ............................*passim*

*In re Jacoby & Meyers-Bankr. LLP*,
   No. 14-10641 (SCC), 2017 WL 4838388 (S.D.N.Y. Oct. 25, 2017)........................................11

*In re Levine*,
   No. 00-15511 SCC, 2012 WL 310944 (S.D.N.Y. Feb. 1, 2012) .............................................12

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993)..................................................................................................8, 16

*In re Rickel & Associates, Inc.*,
   2003 WL 23021972 (S.D.N.Y. Dec. 24, 2003)........................................................................18

*In re Singer Co.*,
  2002 WL 243779 (S.D.N.Y. Feb. 20, 2002) ............................................................. 17

*Interconnect Tel. Servs., Inc. v. Farren*,
  59 B.R. 397 (S.D.N.Y. 1986) .................................................................................. 18

*Miller v. Doniger*,
  293 A.D.2d 282 (1st Dep't 2002) ............................................................................ 16

*Mt. McKinley Ins. Co. v. Corning Inc.*,
  399 F.3d 436 (2d Cir. 2005) .................................................................................... 11

*Nitel, Inc. v. Cerberus Bus. Fin., LLC*,
  No. 21-CV-05996 (VEC), 2021 WL 5770933 (S.D.N.Y. Dec. 3, 2021) .............................. 8, 13

*Pereira v. Farace*,
  413 F.3d 330 (2d Cir. 2005) .................................................................................... 16

*Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain
  London Mkt. Companies*,
  634 B.R. 226 (S.D.N.Y. 2021) ....................................................................... 10, 11, 13, 14

*Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*,
  No. 20-CV-11011 (VEC), 2021 WL 1978560 (S.D.N.Y. May 17, 2021) .......................... 14, 17

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  2012 WL 2524367 (S.D.N.Y. June 26, 2012) .......................................................... 18

*Starr Int'l Co. v. Am. Int'l Grp., Inc.*,
  623 F. Supp. 2d 497 (S.D.N.Y. 2009) ..................................................................... 16

*Stern v. Marshall*,
  564 U.S. 462 (2011) ....................................................................................... 9, 10

**Statutes**

28 U.S.C. § 157(d) ................................................................................................. 1, 8, 19

28 U.S.C. § 1334(b) ................................................................................................. 8

**Rules**

*Amended Standing Order of Reference Re: Title 11*
  12 Misc. 32 (S.D.N.Y. Feb. 1, 2012) ...................................................................... 8

Rule 5011 of the Federal Rules of Bankruptcy Procedure ........................................ 1, 19

Defendants Samuel Waksal ("Waksal"), Rui Wu ("Wu"), Graviton Bioscience Corporation ("Graviton"), Graviton Bioscience Holding Corporation, Graviton US Corp. (USA), Graviton Bioscience B.V., and Bihua Chen ("Chen") (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this memorandum of law, together with the Declaration of Jeffrey M. Eilender, Esq., (the "Eilender Decl.") and the exhibits annexed thereto, in support of their motion to withdraw the reference of this adversary proceeding from the Bankruptcy Court to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Rules of the Bankruptcy Court.

## PRELIMINARY STATEMENT

Debtor Equilibre Biopharmaceuticals Corp. ("Equilibre"), bankrupt by its own actions, brought this adversary proceeding in an attempt to free-ride off the success of Graviton after Equilibre's business collapsed. In this proceeding, the Bankruptcy Trustee asserts a series of state law causes of action (many of which duplicate the claims asserted in a prior state court action brought by Equilibre's successor in interest) against a variety of defendants. All of these claims are meritless, a fact that should (and must) be decided by a Federal District Court, rather than the Bankruptcy Court.

Bankruptcy courts lack the constitutional authority to issue final adjudications in all but a narrow slice of matters. The adversary proceeding here asserts state common law claims that fall well outside the Bankruptcy Court's constitutional authority to finally adjudicate. Indeed, the claims here have very little to do with bankruptcy at all. Instead, the complaint alleges conduct pre-dating the bankruptcy petition that is tangentially related to the bankruptcy matter only in the sense that if the claims were successful (they will not be), then there will be more

money available to pay Equilbre's creditors. Moreover, the question of whether Graviton or Equilbre owns certain intellectual property will be determined by contracts between the parties that are governed by state law. The question of IP ownership lies at the heart of many of the claims alleged here and is the subject of a prior pending state court action filed by the same law firm acting as special litigation counsel here. These factors combine to make this case all the more remote from federal bankruptcy law. Given that the Bankruptcy Court has no authority to decide such claims, this matter should be transferred to the District Court.

District Courts possess original jurisdiction over all bankruptcy matters. While those matters are referred as a matter of course to the bankruptcy courts, the District Court has the authority to withdraw that reference for cause. Under the well-established test for determining cause, withdrawal of the reference is appropriate here.

As a threshold matter, the Bankruptcy Court does not have the constitutional authority to issue a final determination in this case. Thus, the matter will have to come before the District Court at some point. Moreover, the causes of action asserted in the adversary proceeding are not core bankruptcy law claims when they allege exclusively state common law causes of action. These two considerations alone weigh heavily in favor of withdrawing the reference now and allowing this matter to proceed in the District Court in the first instance.

The case for withdrawing the reference becomes even stronger when considering the additional factors the Second Circuit has prescribed for determining cause to withdraw a reference. When the District Court is going to have to assess the matter *de novo* anyway, given the Bankruptcy Court's lack of authority, judicial efficiency is promoted by hearing the case there in the first instance. Eliminating the need to engage in duplicate reviews of the same issues reduces the time, efforts, and costs of the parties and reduces the unnecessary expenditure of

judicial resources inherent in hearing the same issues before two different courts. This is particularly true when the Bankruptcy Court has not yet taken any substantive actions in the case.

Moreover, when the claims at issue relate only to state common law, there is no risk that the District Court's resolution of those claims will create any concerns regarding uniformity of bankruptcy law writ large or in the context of the underlying bankruptcy proceeding. And where bankruptcy courts lack authority to conduct jury trials without the consent of the parties, the fact that Defendants are entitled to a jury trial on the adversary proceeding claims further counsels in favor of withdrawing the reference and hearing this matter in the District Court. Finally, there can be no concern that withdrawing the reference will encourage forum shopping because the matter will be headed to the District Court eventually anyway. There is no reason to wait.

Every factor that the Second Circuit and courts in this District have considered when determining whether to withdraw the reference to bankruptcy court weighs in favor of withdrawal here. This Court should grant this motion to withdraw the reference so that the matter can proceed as efficiently and expeditiously as possible.

## **BACKGROUND**

Equilibre Biopharmaceuticals Corp. was a biotech company focused on developing treatments for neurological diseases (Eilender Decl. Ex. A ¶ 21). Specifically, Equilibre sought to develop a variant of ivermectin as a treatment for seizure disorders like epilepsy. Defendant Samuel Waksal was Equilibre's Chief Executive Officer, President, Chair of the Board, and largest shareholder (*id.* at ¶ 1).

Waksal was also the Chair, Chief Executive Officer and President of Defendants Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp., and

Graviton Bioscience B.V. (Eilender Decl. Ex. A ¶ 5). The Graviton companies were a separate venture, though they shared certain common ownership, directors, and officers with Equilibre.

While Equilibre sought to develop treatments for seizure disorders, Graviton was focused on developing treatments for fibrotic, autoimmune, metabolic, and cancer-related diseases, among other indications. As noted, Equilibre worked with ivermectin, namely its product candidate EQU-001, on which it conducted phase one and phase two clinical trials. Graviton, meanwhile, conducted its work on developing a ROCK2 inhibitor, including GV101, for which it had obtained a license. (ROCK2 is an enzyme involved in various cellular processes. Inhibiting that enzyme can modulate those processes, potentially with therapeutic effects.)

The two companies pursued their own separate lines of research and development under a Shared Services Agreement that specified what intellectual property belonged to which entity. This clear division of disease targets and associated intellectual property was consistently confirmed thereafter by a series of agreements and assignments.

Even before his involvement with Equilibre and Graviton, Waksal was an internationally recognized leader in the biotechnology industry, founding and leading several pioneering drug and medical device companies (Eilender Decl. Ex. A ¶ 22). He had previously founded multiple companies that were subsequently sold for billions of dollars (*id.*).

Equilibre raised approximately $60 million to fund its research and was at one point valued at approximately $157 million (Eilender Decl. Ex. A ¶ 25). This early success was attributable largely to Waksal's proven ability to take private biotech companies to public offerings or high-value acquisitions (*id.* at ¶ 27).

As alleged in the adversary proceeding complaint, Equilibre's audit committee initiated an investigation in March 2022 into claims of misconduct by Waksal (Eilender Decl. Ex. A

¶ 30). The complaint alleges that the investigation uncovered evidence that Waksal had illegally imported, distributed, prescribed, and administered a non-FDA-approved drug; hired a no-show employee, leading to payment to resolve an employee whistleblower claim; fostered a hostile work environment; and obstructed the investigation (*id.* at ¶¶ 32–35). In May 2022, the audit committee recommended Waksal's termination (*id.* at ¶ 35). Waksal resigned from his various roles with Equilibre and turned his attention to Graviton.

After Waksal's exit from the company, Equilibre was no longer able to raise the necessary funding to continue its operations (Eilender Decl. Ex. A ¶ 51). Equilibre tried employing the investment bank Raymond James to assist in raising capital necessary to continue its work, but these efforts proved unsuccessful and Equilibre was not independently able to find willing investors without Waksal at the helm of the company (Eilender Decl. Ex. B ¶ 7).

Unable to obtain further funding, Equilibre filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code in December 2023 (Eilender Decl. Ex. C). In the filing, Equilibre claimed to have no more than $50,000 in assets, while its liabilities were between $10 million and $50 million (*id.* at 3–4). In Equilibre's summary of assets and liabilities—signed under penalty of perjury by Equilibre's Chief Operating, Legal and Compliance Officer, Steve Gordon—Equilibre asserted that its "intangibles and intellectual property" had no value at all (Eilender Decl. Ex. J at 8). The bankruptcy matter remains pending in the Southern District of New York Bankruptcy Court under the caption *In re Equilibre Biopharmaceuticals Corp.*, Case No. 23-12099 (PB).

A few months after the bankruptcy filing, Gordon, approached the Bankruptcy Trustee with an offer to purchase, through a new venture called L4 Bio LLC, Equilibre's rights and interests in "any drug development, biotechnology or biopharmaceuticals" for $65,000 (Eilender

Decl. Ex. B ¶¶ 8–9; Eilender Decl. Ex. D). At the time of the sale, as a matter of public record, the only patents or applications owned by Equilibre were applications related to ivermectin. The $65,000 purchase was theoretically negotiated at arm's length to reflect the value of the asset sold. The Bankruptcy Court approved the sale in August 2024 (Eilender Decl. Ex. E).

After the sale, and against the backdrop of Gordon's assertion in Equilibre's bankruptcy filing—under penalty of perjury—that the company's "intangibles and intellectual property" were without value (*see* Eilender Decl. Ex. J. at 8), L4 Bio retained counsel to advance plainly baseless and illogical claims regarding the intellectual property that L4 Bio supposedly purchased from the estate (Eilender Decl. Ex. B ¶ 10). Specifically, L4 Bio counsel had decided to level claims against Graviton under a (meritless) free-rider theory that Equilibre had somehow owned half of Graviton's valuable intellectual property, notwithstanding numerous written agreements that had clearly delineated the separate intellectual property of each entity, and that this interest was supposedly transferred to L4 Bio via the $65,000 asset purchase. The Bankruptcy Trustee thereafter sought leave to appoint a special litigation counsel to pursue those claims (*id.* at ¶¶ 11, 18).

By order dated March 25, 2025, the Bankruptcy Court authorized the Trustee to appoint "special litigation counsel to investigate Estate Claims and if appropriate, pursue those claims to recovery" (Eilender Decl. Ex. F). The following month, counsel filed the complaint initiating the underlying adversary proceeding (Eilender Decl. Ex. A).

On the same date, L4 Bio, using the same counsel, filed the state court action against Graviton Bioscience Corporation, Graviton Bioscience Holding Corporation, Graviton US Corp. (USA), and Graviton Bioscience B.V. in New York State Supreme Court seeking a declaratory

judgment that as Equilibre's successor in interest, L4 Bio is a fifty-percent co-owner of all of the intellectual property owned by the Graviton entities. (Eilender Decl. Ex. G).

The adversary proceeding complaint alleges a series of state common law causes of action. Those claims include breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, negligence per se, conversion, and unjust enrichment (Eilender Decl. Ex. A ¶ 53–110). When read in conjunction with the State Court Complaint, it is clear that the Graviton-owned intellectual property that the Adversary Complaint alleges was converted (and from which the Defendants were purportedly unjustly enriched) relates exclusively to ROCK2 inhibitors. Thus, the determination of the state court action declaring who, as matter of the state law contracts between Graviton and Equilibre, owns the ROCK2 inhibitor intellectual property also determines a substantial portion of the adversary complaint.

The complaint seeks no less than $150 million plus punitive damages (Eilender Decl. Ex. A at 22). Defendants vigorously dispute the allegations and conclusions set forth in the complaint, but those disputes are not before the court on the present motion.

So far, there has been no substantive judicial action on the adversary proceeding. By stipulation among the parties (which the Bankruptcy Court so-ordered), Defendants have until July 21, 2025 to answer or move to dismiss the complaint (Eilender Decl. Ex. H). In the event Defendants move to dismiss, briefing is not scheduled to be completed until September 26, 2025 (*id.*). The pre-trial conference in the proceeding has been adjourned until October 7, 2025 (*id.*). The parties have not engaged in any discovery or motion practice prior to the date of this filing.

## ARGUMENT

## THIS COURT SHOULD WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT FOR THE ADVERSARY PROCEEDING

## I.    LEGAL STANDARD

Federal district courts "have original but not exclusive jurisdiction of all civil proceedings" arising under, arising in, or related to bankruptcy proceedings. 28 U.S.C. § 1334(b). In this District, bankruptcy proceedings are automatically referred to the Bankruptcy Court per a standing court order. *See Amended Standing Order of Reference Re: Title 11*, 12 Misc. 32 (S.D.N.Y. Feb. 1, 2012). After a proceeding is referred to the Bankruptcy Court, a "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

"The statute does not define 'cause,' but the Second Circuit has outlined a framework by which district courts can assess whether cause for withdrawal exists." *In re Empire Stat Grp., LLC*, No. 24-CV-04101 (ER), 2024 WL 3666381, at *2 (S.D.N.Y. Aug. 5, 2024). For decades, the courts in this Circuit have used the test set forth in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993). Under *Orion*, a court weighing a motion to withdraw the reference to Bankruptcy Court should "evaluate whether the claim or proceeding is core or non-core, whether it is legal or equitable," and should then consider "efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *Id.* at 1101.

Ultimately, the "analysis comes down to whether efficiency and uniformity would be better served by litigating in the district court." *AJ Ruiz Consultoria Empresarial S.A. v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 22 CIV. 521 (LGS), 2022 WL 1831171, at *2 (S.D.N.Y. June 3, 2022). The party seeking to withdraw the reference bears the burden of proof. *Nitel, Inc. v. Cerberus Bus. Fin., LLC*, No. 21-CV-05996 (VEC), 2021 WL 5770933, at *1 (S.D.N.Y. Dec. 3, 2021).

The *Orion* factors have been modified following the Supreme Court's holding in *Stern v. Marshall*, 564 U.S. 462 (2011). There, the Court held that in some cases the bankruptcy courts had been granted the statutory authority to finally adjudicate a matter, but "lacked the constitutional authority to do so." *Id.* at 469. This arose from the Court's understanding that "only Article III courts may make final determinations in common law, equity, and admiralty suits." *Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012). Thus, the Court in *Stern* found that a bankruptcy court possessed the constitutional authority to finally adjudicate a claim "in only three instances: [1] where the right being adjudicated is public rather than private; [2] where the defendant filed a proof of claim in the bankruptcy proceeding; or [3] where the parties consented to have the bankruptcy court enter final judgment." *Empire Stat Grp.*, 2024 WL 3666381, at *2; *see also Stern*, 564 U.S. at 488–95.

The Second Circuit has not yet addressed how the *Orion* analysis should be applied after the Supreme Court's holding in *Stern*. *Empire Stat Grp.*, 2024 WL 3666381, at *2. District courts in the Circuit have generally applied one of two approaches. Some have entirely replaced the core/non-core distinction set forth in *Orion* with the question of constitutional authority identified in *Stern*, while others have maintained that distinction and added the constitutional authority inquiry as an additional threshold step. *Id.* at *2 & nn. 1, 2. Under either approach, withdrawal of the reference is appropriate in this matter.

## II.    THE THRESHOLD ISSUES HERE FAVOR WITHDRAWING THE REFERENCE.

Regardless of how the threshold question is framed, the answer counsels in favor of withdrawing the reference here. The claims raised in the adversary proceeding are state common law claims, which are indisputably outside the Bankruptcy Court's constitutional authority to finally adjudicate. Moreover, those state common law claims are non-core because they are not

9

directly related to the Bankruptcy Court's central functions. And because many of these non-core, state law claims will be resolved by the prior pending state court action, their connection with the federal bankruptcy court is even more remote.

### A. The Bankruptcy Court lacks constitutional authority to issue a final adjudication in this matter.

The state common law claims asserted in the adversary proceeding complaint do not fit within any of the categories the Supreme Court found a Bankruptcy Court had the constitutional authority to finally adjudicate. As a matter of record, none of the defendants named in the complaint filed a proof of claim in the underlying bankruptcy proceeding (Eilender Decl. Ex. I). Likewise, the defendants have not consented to have the bankruptcy court enter a final judgment.

Nor do the claims at issue here seek to adjudicate a public right. The Supreme Court explained that "what makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action." *Stern*, 564 U.S. at 490–91. No such federal action is implicated by the claims here, which assert common law tort claims arising from a private business enterprise. Adjudication of such "common law cause[s] of action, when the action neither derives from nor depends upon any agency regulatory regime," represents "the most prototypical exercise of judicial power" for which an Article III court is required. *Id.* at 494–95.

Courts have been clear that "claims under state common law between two private parties do not fall within the public rights exception." *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*, 634 B.R. 226, 234 (S.D.N.Y. 2021) (internal quotation marks omitted). Indeed, the same common law causes of action at issue in this case have been held to be "indisputably private rights." *In re Arbco Cap. Mgmt., LLP*, 479 B.R. 254, 266 (S.D.N.Y. 2012) (common law claims for breach of fiduciary

duty and negligence); *accord In re Jacoby & Meyers-Bankr. LLP*, No. 14-10641 (SCC), 2017 WL 4838388, at *4 (S.D.N.Y. Oct. 25, 2017) (same).

Thus, the Bankruptcy Court lacks constitutional authority to issue a final adjudication as to the complaint. None of the three exceptions to the exclusive authority of the Article III courts are even arguably implicated here. This absence of constitutional authority for the Bankruptcy Court to finally adjudicate this matter weighs heavily in favor of withdrawing the reference in this matter. *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 237.

**B.      The Adversary Proceeding is a non-core matter.**

The state claims at issue also fall outside of core bankruptcy matters, a fact that also weighs in favor of withdrawing the reference here. Core proceedings are those "directly related to a bankruptcy court's central functions." *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447–48 (2d Cir. 2005). Phrased differently, a core proceeding is one "that could arise only in the context of a bankruptcy case." *In re Celsius Network LLC*, No. 1:25-CV-00926 (JLR), 2025 WL 1040643, at *6 (S.D.N.Y. Apr. 8, 2025); *Empire Stat Grp.*, 2024 WL 3666381, at *4. In contrast, a claim is non-core if it is related to a bankruptcy proceeding and "might have a conceivable effect on the estate." *Celsius Network LLC*, 2025 WL 1040643, at *6. A non-core claim "does not depend on bankruptcy laws for its existence and could proceed in a court that lacks federal bankruptcy jurisdiction." *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 236 (cleaned up).

The state common law causes of action asserted in the adversary complaint are non-core claims. They do not arise only in the context of a bankruptcy case. Nor can there be any doubt that state common law claims can proceed in a court lacking federal bankruptcy jurisdiction; namely, a state court. Reflecting this, courts in the Southern District have routinely found that state common law claims—including for the breach of fiduciary duty, negligence, conversion,

11

and unjust enrichment causes of action at issue here—are non-core claims. *Arbco Cap. Mgmt.*, 479 B.R. at 266 (breach of fiduciary duty, negligence); *AJ Ruiz Consultoria Empresarial S.A.*, 2022 WL 1831190, at *3 (unjust enrichment, breach of fiduciary duty); *In re Levine*, No. 00-15511 SCC, 2012 WL 310944, at *3 (S.D.N.Y. Feb. 1, 2012) (conversion, unjust enrichment).

The non-core nature of the claims here is even directly alleged in the adversary proceeding complaint. The complaint's first paragraph states that "[a]t its core" the complaint is about Defendants' alleged misbehavior (Eilender Decl. Ex. A ¶ 1). As expressly alleged in the complaint, this matter is not about the underlying bankruptcy at all, but rather about allegedly tortious conduct that pre-dated the petition.

The fact that the claims here (in the unlikely event that they are successful) might have an effect on the estate does not transform the adversary proceeding alleging state common law claims into a core bankruptcy proceeding. Any potential effect is "only tangentially related to the underlying bankruptcy proceeding, and only insofar as [the Trustee] stand[s] to recover a sum that could impact the liquidation and administration of the estate." *Celsius Network LLC*, 2025 WL 1040643, at *7. But the exact same thing "might be said of many a claim brought by a debtor during the pendency of the debtor's bankruptcy proceedings" and is thus "insufficient grounds to deny a withdrawal motion when the other relevant factors all tip in favor of removal to a federal district court." *Id.* That is exactly the situation here, where all the relevant factors favor withdrawing the reference to the Bankruptcy Court.

## III.    CONSIDERATION OF THE *ORION* FACTORS FAVORS WITHDRAWING THE REFERENCE.

That the claims at issue are non-core and the Bankruptcy Court lacks final adjudicative authority over them "strongly weigh in favor of withdrawal of the reference." *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 237. In such a situation, "[i]n order to deny the motion to

12

withdraw the reference, the remaining factors would have to weigh heavily in support of hearing this dispute in bankruptcy court." *Nitel, Inc.*, 2021 WL 5770933, at \*2. The remaining *Orion* factors do not weigh heavily in favor of hearing this dispute in the Bankruptcy Court. Instead, each of the factors strongly favors granting this motion to withdraw the reference.

### A.  Withdrawing the reference serves the interests of judicial efficiency.

The interests of judicial efficiency here clearly favor withdrawing the reference when the Bankruptcy Court lacks constitutional authority to enter a final adjudication and the court has not yet taken any substantive action on the matter. There is no reason to force the parties to litigate the same matter twice rather than proceed straight to the District Court where the matter will necessarily end up.

Courts in this District routinely hold that efficiency favors withdrawing the reference when the claims at issue are non-core and beyond the constitutional authority of the Bankruptcy Court to finally adjudicate. "As a non-core proceeding, the bankruptcy court's power will be limited to making recommendations to the District Court, which can undertake a *de novo* review of that court's findings of fact and conclusions of law before entering a final order." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 593 (S.D.N.Y. 2012). "In such cases, it is generally 'inefficient to allow proceedings to go forward knowing that they will have to be substantially repeated.'" *Empire Stat Grp.*, 2024 WL 3666381, at \*6 (quoting *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011)); *accord Celsius Network LLC*, 2025 WL 1040643, at \*6; *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*, No. 20-CV-11011 (VEC), 2021 WL 1978560, at \*10 (S.D.N.Y. May 17, 2021); *Dynegy Danskammer*, 905 F. Supp. 2d at 533.

The consensus on this issue makes sense. If a matter is going to be heard *de novo* before the District Court anyway, it is more efficient for both the parties and the court system to litigate there in the first instance. Engaging in "duplicate reviews" of a case is "costly and time-consuming, and unnecessarily expend[s] judicial resources." *DeWitt Rehab. & Nursing Ctr.*, 464 B.R. at 593; *accord Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 238 ("The need to litigate first in the bankruptcy court and then again in the district court could make the proceedings generally more costly for the parties.").

Because the matter is in its earliest stages and the Bankruptcy Court has not yet taken any substantive action, the interest in proceeding efficiently is well served by withdrawing the reference now. Nothing has been conducted to date that would give the Bankruptcy Court "any specialized familiarity of or experience with" the claims here that might counsel in favor of leaving the matter where it is. *Empire Stat Grp.*, 2024 WL 3666381, at *7. When "no discovery has taken place, and no case management plan or other course of proceeding has been agreed on, bringing the actions before this Court will not cause undue delay or require any duplication of effort." *Dev. Specialists*, 462 B.R. at 472.

Nothing of any substance has happened yet in this adversary proceeding aside from the filing of the complaint. There has been no discovery, case management plan, or anything else. There has not even been an answer. That is not due for another month, as of the filing of this motion. The Bankruptcy Court is not scheduled to have a hearing on this proceeding until October—more than three months from now. The only action the Bankruptcy Court has taken so far on the claims here is to so-order a stipulation setting out the schedule just described (Eilender Decl. Ex. H). Thus, "this is not a case where the bankruptcy court is more familiar with the record or already has extensive experience in the matter, such that it would be most efficient for the

bankruptcy court to propose recommendations first, even though the district court ultimately would have to review them de novo." *Celsius Network LLC*, 2025 WL 1040643, at *6. Nothing about the conduct of this case to date would render it inefficient to withdraw the reference. Instead, leaving the matter in the Bankruptcy Court will result in wasted time and needless costs associated with proceeding in the Bankruptcy Court, before the parties duplicate those proceedings to obtain a final adjudication in the District Court. Interests in efficiency counsel strongly in favor of granting the motion to withdraw the reference.

**B.      Withdrawing the reference does not impede uniformity interests.**

Withdrawal of the reference for the District Court to decide matters in the first instance does not pose any risk to uniformity. "This factor encompasses both the uniform administration of bankruptcy law and intra-case uniformity." *Celsius Network LLC*, 2025 WL 1040643, at *7 (internal quotation marks omitted). Neither is implicated here.

First, there is no danger that the District Court's resolution of the state common law claims in the adversary proceeding will impede the uniformity of bankruptcy law. This conclusion arises from the fact that "the claims at issue are non-core claims that do not arise under bankruptcy law" at all. *Celsius Network LLC*, 2025 WL 1040643, at *7. How the District Court resolves the state law claims will not affect the development of bankruptcy law in the slightest. Thus, "[c]ourts routinely have found no [uniformity] benefit where claims are based on state law." *Dynegy Danskammer*, 905 F. Supp. 2d at 533; *accord Dev. Specialists*, 462 B.R. at 473.

Second, there is no possibility of impeding intra-case uniformity should the District Court hear the claims in the initial instance. The state law causes of action asserted in the adversary proceeding are "non-core claim[s] distinct from the underlying bankruptcy proceeding." *Empire Stat Grp.*, 2024 WL 3666381, at *8. "Thus, having a district court decide this matter would not

15

result in inconsistent rulings between the district court and bankruptcy court." *Id.* In fact, it is hard to see how withdrawal *could* result in inconsistent rulings when the claims asserted relate only to pre-petition conduct alleged to violate state common law duties. Such claims are, at best, tangential to the underlying bankruptcy and a ruling on those claims (which the District Court will have to make anyway) has no possibility of conflicting with the Bankruptcy Court's rulings on core bankruptcy matters.

### C.    Withdrawing the reference respects the parties' rights to a jury trial.

Also weighing in favor of withdrawal is the fact that, while Defendants are entitled to a jury trial of the adversary proceeding claims, the Bankruptcy Court cannot conduct that trial. Bankruptcy courts are "prohibited from conducting jury trials on claims" like those here "over which they lack final adjudicative authority." *Empire Stat Grp.*, 2024 WL 3666381, at \*8. The "inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." *Orion Pictures*, 4 F.3d at 1101.

The causes of action asserted in the adversary proceeding are legal claims for which money damages are sought. Defendants are, thus, entitled to demand a jury trial for those claims. *See Pereira v. Farace*, 413 F.3d 330, 340–41 (2d Cir. 2005) (holding that "defendants were entitled to a jury trial on the Trustee's breach of fiduciary duty claims" seeking compensatory damages); *In re Bridge Const. Servs. of Fla., Inc.*, 140 F. Supp. 3d 324, 338 (S.D.N.Y. 2015) (holding that common law negligence claim should be decided by jury); *Starr Int'l Co. v. Am. Int'l Grp., Inc.*, 623 F. Supp. 2d 497, 501 (S.D.N.Y. 2009) (holding that "conversion is unmistakably an action at law triable to a jury"); *Miller v. Doniger*, 293 A.D.2d 282, 282 (1st Dep't 2002) (holding that "claims for unjust enrichment where an award of money would fairly compensate the party bringing the claim" are "primarily legal in nature" and thus entitled to be

tried to a jury). The fact that the Bankruptcy Court cannot conduct the required trial counsels in favor of withdrawing the reference.

### D.    Withdrawing the reference will not encourage forum shopping.

Finally, there is no danger that withdrawing the reference will encourage forum shopping. Because the District Court will be required to issue a final adjudication of this matter anyway, "the Court does not condone forum shopping by allowing them to come here sooner rather than later." *Dev. Specialists*, 462 B.R. at 473; *accord Empire Stat Grp.*, 2024 WL 3666381, at *8; *Arrowood Indem. Co.*, 2021 WL 1978560, at *11; *Brown Publ'g Co. v. Brown*, No. 15-MC-0531(JS), 2017 WL 455418, at *5 (E.D.N.Y. Feb. 1, 2017).

Moreover, Defendants' motivation to file this motion is to promote a more efficient adjudication, not engage in forum shopping. The Bankruptcy Court has not issued any rulings adverse to Defendants—or any rulings at all, for that matter—that would cause Defendants to even consider seeking a more favorable forum. *See Celsius Network*, 2025 WL 1040643, at *8. Defendants look forward to defeating these claims and seek to do so in the most efficient way possible, by going straight to the District Court that will issue the final adjudication here.

## IV.    THE MOTION TO WITHDRAW THE REFERENCE IS TIMELY.

Defendants' application to withdraw the reference of the adversary proceeding to the Bankruptcy Court is timely. Because "[n]o specific time limit exists for applications to withdraw a reference from bankruptcy court," determining whether a motion to withdraw is timely involves a fact-specific inquiry into the context of the specific situation. *In re Singer Co.*, 2002 WL 243779, at *4 (S.D.N.Y. Feb. 20, 2002). "[T]he flexibility of the timeliness requirement reflects the need for courts to interpret the word 'timely' in a manner that protects parties' substantive

rights." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2012 WL 2524367, at *3 (S.D.N.Y. June 26, 2012).

In assessing timeliness, courts look to whether significant proceedings have taken place. "Delay for tactical reasons, such as forum shopping, or which prejudices the opposing party or the administration of justice, can be grounds for denying a withdrawal motion as untimely." *Sec. Investor Prot. Corp.*, 2012 WL 2524367, at *2; *see also Drew v. WorldCom, Inc*., 2006 WL 2129309 (S.D.N.Y. July 26, 2006) (denying motion to withdraw filed after delay of 18 months based, in part, on indications of forum shopping); *In re Rickel & Associates, Inc*., 2003 WL 23021972 (S.D.N.Y. Dec. 24, 2003) (noting that the "presence or absence of prejudice is a factor in assessing timeliness").

Here, no significant proceedings have taken place in the Bankruptcy Court related to the adversary proceeding. There have been no motions, discovery, or other matters requiring the Bankruptcy Court to issue a substantive ruling. Nor is there any indication of delay for tactical reasons. *Cf. Sec. Investor Prot.*, 2012 WL 2524367, at *3 (withdrawing reference notwithstanding five-month delay in filing motion); *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y. 1986) (granting motion to withdraw reference despite more than 12-month delay, where discovery had taken place and the bankruptcy court had already denied a motion to dismiss, since plaintiff was not prejudiced). To the contrary, this motion is Defendants' first substantive filing in this dispute. The motion here is plainly timely.

## <u>CONCLUSION</u>

Defendants' motion for withdrawal of the reference of this adversary proceeding to the District Court for the Southern District of New York, pursuant to 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Rules of the Bankruptcy Court, should be granted.

Dated: New York, New York
   June 23, 2025

             Respectfully submitted,

             **SCHLAM STONE & DOLAN LLP**

       By:  */s/ Jeffrey M. Eilender*
          Jeffrey M. Eilender
          Jolene LaVigne-Albert
          Joshua Kahane
          John Moore
          26 Broadway, 19th Floor
          New York, New York 10004
          Telephone: (212) 344-5400
          Email: jeilender@schlamstone.com
          Email: jlavignealbert@schlamstone.com
          Email: jkahane@schlamstone.com
          Email: jmoore@schlamstone.com

          *Attorneys for Defendants Samuel*
          *Waksal, Rui Wu, Graviton*
          *Bioscience Corporation, Graviton*
          *Bioscience Holding Corporation,*
          *Graviton US Corp. (USA), Graviton*
          *Bioscience B.V., and Bihua Chen*